IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL MOLTER, | : | CIVIL ACTION- LAW |
| Plaintiff | : | |
| VS. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant | : | NO. |

## COMPLAINT

NOW COMES Plaintiff, Paul Molter, by and through his attorneys, Dougherty, Leventhal & Price, L.L.P. to file a Complaint against the Defendant as follows:

I. **JURISDICTION and VENUE**

1. This matter involves a medical malpractice claim for personal injuries and expected death against the United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b).

2. Jurisdiction is based on 28 U.S.C. §1331 (Federal Question), 42 U.S.C. §1346 et seq. (FTCA Litigation) and 28 U.S.C. §1367 (Supplemental Jurisdiction).

3. Venue is proper in this Court because the acts and omissions that form the subject matter of this action occurred in this judicial district. (See 28 U.S.C. 1391(b)).

## II. THE PARTIES

4. Plaintiff Paul Molter is an adult, competent individual who currently resides at 612 E. Market Street, Scranton, PA 18509.

5. Defendant the United States of America is a sovereign nation comprised of 50 states and several territories.

6. At all times relevant hereto, Defendant owned, operated and had under its exclusive control a hospital and medical treatment facility known as the Wilkes-Barre VA Medical Center located at 1111 East End Boulevard, Wilkes-Barre, PA 18711.

## III. GENERAL ALLEGATIONS

7. Prior to the initiation of this lawsuit, on November 6, 2014, the Plaintiff presented an administrative claim for damages against the Defendant as a result of injuries he suffered as a result of negligent and careless medical care and treatment he received as a patient of the Wilkes-Barre VA Medical Center.

8. On May 20, 2015, Defendant issued a letter denying Plaintiff's administrative claim.

9. At all times relevant hereto, Plaintiff was under the exclusive medical care, treatment and attendance of the physicians, staff and personnel at the Wilkes-Barre VA Medical Center, directly and/or through its agents, ostensible agents,

servants, workmen and/or employees, all of whom the Wilkes-Barre VA Medical Center had under its' direct control and supervision, and/or had the right to control/supervise.

10. At all times relevant hereto, the Wilkes-Barre VA Medical Center was responsible for the negligent acts and omissions of its agents, ostensible agents, servants, workmen and/or employees.

11. At all times relevant hereto, as the owner, operator and entity in control of the Wilkes-Barre VA Medical Center and pursuant to 22 U.S.C. 2702 (a) and 28 U.S.C. 1346 (b), 28 U.S.C. 2671, 28 U.S.C. 2674 and 28 U.S.C. 2679(a), the Defendant was responsible and liable for the negligence of the Wilkes-Barre VA Medical Center and its agents, ostensible agents, servants, workmen and/or employees.

12. At all times relevant hereto, Dr. Atul Dalsania, Dr. Ami Shah, Dr. Amber Batool, Dr. Raulie D. Rodrigo, Dr. Thomas Delahanty, Dr. Aamir Zaman and other unknown medical care providers, in providing medical care to the Plaintiff, acted as agents, ostensible agents, servants, workmen and/or employees of the Wilkes-Barre VA Medical Center, and they were acting within the course and scope of their employment at all such times.

13. Plaintiff is a long-time patient at the Wilkes-Barre VA Medical Center. In this regard, at all times relevant hereto, the Wilkes-Barre VA Medical Center had detailed documentation and information regarding Plaintiff's prior medical history.

14. At all times relevant hereto, Dr. Dalsania was Plaintiff's primary care physician at the Wilkes-Barre VA Medical Center

15. On or about August 8, 2011, based on results of a CT Scan of his chest, Plaintiff's treating physicians at the Wilkes-Barre VA Medical Center, including Dr. Dalsania, advised him that he had a small nodule in the upper lobe of his right lung and that they would monitor this condition to make sure that it remained stable.

16. CT scans of Plaintiff's chest performed on November 26, 2012 and November 29, 2012, revealed a 5-6 mm right upper lobe nodule. However, Dr. Rodrigo, the interpreting radiologist, failed to identify these findings in his imaging reports.

17. On or about March 13, 2013, in an effort to continue monitoring the upper lobe nodule previously detected in his right lung, according to the radiology report, Dr. Batool ordered a CT Scan of Plaintiff's chest.

18. Dr. Shah, a radiologist, interpreted the March 13, 2013 CT Scan and noted in the Impression section of her report as follows:

> Increase in size of lung nodules in the right upper lobe. Would recommend FDG PET CT to characterize. Possibly superimposed infection however malignancy is not excluded.

19. Dr. Shah's March 13, 2013 CT Scan report further indicated that the right upper lobe nodule had increased in size to 8 mm as compared to 3 mm on the CT scan of November 29, 2012, and it further noted in all caps:

> POSSIBLE MALIGNANCY, FOLLOW-UP REQUIRED

20. Dr. Shah's March 13, 2013 CT Scan report does not indicate that the results or a copy thereof was ever provided to Plaintiff's treating physician(s) and/or the requesting physician Dr. Batool.

21. Based on their knowledge of Plaintiff's prior medical history including the existence of a right upper lobe nodule, Plaintiff's treating physicians should have followed up with Dr. Shah to obtain the results of the March 13, 2013 CT Scan of his chest.

22. Neither Dr. Shah, any of Plaintiff's treating physicians, and/or the requesting physician advised the Plaintiff of the findings detected on the March 13, 2013 CT Scan of his chest.

23. The March 13, 2013 CT Scan revealed that Plaintiff had a cancerous lung mass in his right upper lobe.

24. Following the March 13, 2013 CT Scan, none of Plaintiff's treating physicians recommended any treatment or ordered any further testing to treat Plaintiff's then existing lung cancer.

25. Following the March 13, 2013 CT Scan, Plaintiff's treating physicians should have ordered a chest CT PET Scan, a biopsy of the lung mass or a right upper lobectomy to properly assess necessary and required care and treatment for the Plaintiff's then existing lung cancer.

26. Although Plaintiff had subsequent evaluations by his treating physicians, no follow-up testing or treatment was ordered or performed regarding Plaintiff's lung cancer until more than fifteen (15) months later when Dr. Dalsania finally ordered a FDG PET CT Scan on July 2, 2014.

27. The July 2, 2014 FDG PET CT scan revealed that the size of the right upper lobe nodule had increased in size to 17 mm, and a bulky mediastinal adenopathy and the nodule were both hypermetabolic, evidencing malignancy.

28. On or about July 25, 2014, Dr. Delahanty ordered a percutaneous needle biopsy of Plaintiff's right upper lung mass. This study was performed at Wilkes-Barre General Hospital and it revealed small cell lung cancer.

29. Plaintiff subsequently underwent radiation and chemotherapy treatment for his cancer.

30. On or about March 30, 2015, Dr. Delahanty ordered a percutaneous needle biopsy of a mass that had developed on Plaintiff's right scapula. This study was performed at Wilkes-Barre General Hospital and it revealed that the Plaintiff's small cell lung cancer was metastatic to bone.

31. Plaintiff's treating oncologist Dr. Zaman has advised him that the cancer treatments that he received were not successful in stopping the spread of the disease and that no further treatment is available.

32. Plaintiff's treating oncologist Dr. Zaman has advised him that his cancer is now terminal.

33. Plaintiff's treating physicians and medical staff at the Wilkes-Barre VA Medical Center were negligent and careless in failing to promptly diagnose his lung cancer and in failing to recognize the significance of the findings on the March 13, 2013 CT Scan, resulting in their failure to promptly order further required testing and to provide prompt, necessary and proper care and treatment to the Plaintiff.

34. The Wilkes-Barre VA Medical Center's negligence and carelessness in failing to promptly diagnose his lung cancer and in failing to provide necessary,

required and prompt care and treatment has directly caused serious and permanent injuries to the Plaintiff, including an increase in his risk of harm and death.

35. The Wilkes-Barre VA Medical Center lacked proper policies and procedures to ensure that Plaintiff's condition would be properly monitored and diagnosed to ensure that he would receive proper and necessary medical care, testing and treatment, and the Center knew or should of known of the deficiencies in said policies and procedures.

36. The carelessness and negligence of the Wilkes-Barre VA Medical Center, individually and by and through its employees, servants, agents, ostensible agents and/or workmen, including but not limited Dr. Dalsania, Dr. Shah, Dr. Batool, includes the following:

    a. Failing to conform to the requisite standard of reasonable medical care and skill under the circumstances;

    b. Failure to possess the degree of care, knowledge and skill ordinarily exercised in similar cases by other physicians and medical care providers;

    c. Failure to exercise the degree of care, knowledge and skill required under the circumstances;

d. Failing to provide and render reasonable, proper and required medical care and treatment to Plaintiff under the circumstances, including further diagnostic testing;

e. Failing to properly select, train, and supervise their agents, servants, workmen and/or employees to assure Plaintiff's receipt of reasonable medical care and treatment under the circumstances;

f. Failing to promptly detect and properly diagnose Plaintiff's lung cancer in March 2013 following a CT Scan of his chest;

g. Failing to properly read, interpret and report the results of the March 13, 2013 CT Scan of Plaintiff's chest;

h. Failure to exercise reasonable care in the diagnosis and treatment of the Plaintiff's condition for which prompt diagnosis and treatment were critical for effective medical treatment;

i. Failure to communicate to Plaintiff's treating physicians the results of the March 13, 2013 CT Scan of his chest;

j. Failure to promptly refer the Plaintiff to the necessary medical specialists to promptly diagnose and treat his condition following the March 13, 2013 CT Scan of his chest;

k. Failure to communicate to the Plaintiff the results of the March 13, 2013 CT Scan of his chest and the cancer detected thereby;

l. Failure to follow-up with the radiologist who performed the March 13, 2013 CT Scan of Plaintiff's chest for the results of said study;

m. Failure to appreciate the risk of failing to promptly follow-up with the radiologist who performed the March 13, 2013 CT Scan of Plaintiff's chest to obtain the results thereof;

n. Failing to appreciate the risk of failing to promptly order required follow-up tests and to provide prompt, proper medical care and treatment following the March 13, 2013 CT Scan of Plaintiff's chest;

o. Failing to properly direct, train and supervise the physicians, radiologists and medical staff who were treating Plaintiff;

p. Failing to properly monitor the right upper lobe nodule detected on a CT Scan of Plaintiff's chest on August 8, 2011.

q. Failing to keep apprised and be aware of Plaintiff's medical condition;

r. Failing to order regular, periodic testing to properly monitor Plaintiff's right upper lobe nodule;

s. Delaying ordering any further testing and medical treatment for Plaintiff's right upper lobe nodule for almost fifteen (15) months after the March 13, 2013 CT Scan of Plaintiff's chest revealed cancer;

t. Failing to appreciate the significance and danger of not properly monitoring Plaintiff's right upper lobe nodule;

u. Failing to take all appropriate, necessary and required action so as to not to increase the risk of injury/harm and death to the Plaintiff;

v. Failing to adhere to the Center's practices, policies and procedures so as to ensure that Plaintiff would be cared for and treated properly, and his condition monitored appropriately;

w. Failing to comply with the accepted standard of care, including inter alia, failing to promptly diagnose Plaintiff's cancer and failing to promptly order further required testing and treatment

    so as to prevent and/or decrease the risk of injury/harm and death to the Plaintiff;

x. Failing to adopt and implement practices, policies and procedures so as to ensure that the Plaintiff would be cared for properly, and that his condition would be appropriately diagnosed, treated and/or monitored;

y. Breaching the requisite standard of reasonable medical care by failing to promptly diagnose Plaintiff's cancer and failing to promptly order further required testing and treatment so as to prevent and/or decrease the risk of injury/harm and death to the Plaintiff;

z. being otherwise negligent and careless as may be demonstrated at trial or determined through discovery.

37. As a direct result of the negligent and careless acts of the Wilkes-Barre VA Medical Center, individually and by and through its employees, servants, agents, ostensible agents and/or workmen, including but not limited Dr. Dalsania, Dr. Shah, Dr. Batool, and/or other unknown medical staff acting under their direction, control and supervision within the course and scope of their

employment, Plaintiff suffered serious and permanent injuries, including an increased risk of injury/harm and death, to his great detriment and loss.

38. As a direct result of the negligent and careless acts of the Wilkes-Barre VA Medical Center, individually and by and through its employees, servants, agents, ostensible agents and/or workmen, including but not limited Dr. Dalsania, Dr. Shah, Dr. Batool, and/or other unknown medical staff acting under their direction, control and supervision within the course and scope of their employment, Plaintiff has experienced a loss of the pleasures of life, an interruption in his lifestyle, embarrassment, humiliation, discomfort, inconvenience, distress, depression, great physical pain and mental anguish, and he will continue to endure the same for an indefinite time in the future, to his great detriment and loss.

39. As a direct result of the negligent and careless acts of the Wilkes-Barre VA Medical Center, individually and by and through its employees, servants, agents, ostensible agents and/or workmen, including but not limited Dr. Dalsania, Dr. Shah, Dr. Batool, and/or other unknown medical staff acting under their direction, control and supervision within the course and scope of their employment, Plaintiff has been unable to attend to and perform his usual and daily

duties, avocations, and labors, and will continue to be so disabled for an indefinite time in the future, to his great detriment and loss.

40. As a direct result of the negligent and careless acts of the Wilkes-Barre VA Medical Center, individually and by and through its employees, servants, agents, ostensible agents and/or workmen, including but not limited Dr. Dalsania, Dr. Shah, Dr. Batool, and/or other unknown medical staff acting under their direction, control and supervision within the course and scope of their employment, Plaintiff has incurred expenses to treat his medical condition and upon information and belief, he will continue to incur medical expenses to treat his condition for an indefinite time in the future, to his great detriment and loss.

WHEREFORE, Plaintiff demands judgment against the Defendant in an amount in excess of $75,000.00, plus interest and costs.

Respectfully submitted

DOUGHERTY, LEVENTHAL & PRICE, L.L.P.

/s/ Joseph G. Price
Joseph G. Price, Esquire
ID# 32309
jprice@dlplaw.com

/s/ John P. Finnerty
JOHN P. FINNERTY
ID# 78027
jfinnerty@dlplaw.com

Date: November 17, 2015    Attorneys for Plaintiff